TukNEY, J.,
delivered the opinion of the court.
On the 17th of December, 1861, the Legislature of the State of Georgia enacted, “ That the superintendent of the Western and Atlantic Railroad of this State be, and he is hereby, authorized to issue and put in circulation change hills of the denominations of one dollar, fifty cents, twenty-five cents, ten cents, and five cents, the aggregate amount of which shall not exceed the sum of $200,000; which change bills shall be signed by the said superintendent and countersigned by the treasurer of said road; provided, that the amount of said change bills of the denomination of one dollar shall not exceed, the sum of $15,000.”
“ Sec. 2. Said change bills shall be redeemed by said treasurer in current bank notes,_ whenever presented in sums of five dollars or upwards; and for the ultimate redemption of the change bills which may be issued as aforesaid, the said Western and Atlantic Railroad, its fixtures, property and revenues, together with the faith of the State, are hereby pledged.”
“Sec. 4. All change bills issued under the provisions of this act shall be and are hereby made receivable in payment of taxes and all other dues to the State, as well as dues to said Western and Atlantic Railroad.
“Sec. 9. Be it further enacted, that the superintendent of the Western and Atlantic Railroad be re *411 quired, on demand, to furnish to the treasurer of each county in the State as much as $500 in change bills in exchange for current bank bills.”
The defendant in error is the holder of a number of said change bills, amounting in the aggregate to the sum of $122.50, of which the following is a copy: “ No. 77. C. Atlanta, Ga., March 1, 1862.
“The Western and Atlantic Railroad will pay the bearer one dollar in current bank notes whenever the sum of five dollars in these bills is presented. Ben May, Treasurer. Wm. Grisham for Supt.
“Receivable in payment of all taxes and all dues to the State and to the Western and Atlantic Railroad. ”
On the 6th of April, 1863, the Legislature of Georgia passed another act providing, amongst other things, “Sec. 1. That any and all change bills that have been or may hereafter be signed by William Grisham or other person for the superintendent of the Western and Atlantic Railroad, are hereby declared to be legal and binding on the State of Georgia,- and that all such bills as have been or may be issued in the manner aforesaid, shall be held and taken to be issued under the provisions of an act passed and assented to December 17, 1861, and in all respects subject to all the terms, limitations and provisions, and also to all the pains, penalties and punishments in said act contained.”
On the 5th of April, 1870, defendant presented his bills for payment, which being refused, were protested, and suit commenced before a magistrate 11th *412 of April, 1870; then there was judgment for defendant in error, an appeal to the Circuit Court, judgment for defendant in error, and appeal to this court.
It is insisted, first, by plaintiff in error that the judgment should be reversed, because it is for the full amount of the face of the bills, when, if the defendant in error was entitled to recover at all, it would only be for the value of the bank notes, in which the parties contemplated, at the time of the issuance of the change bills, they should be paid, such value to be on the day the change bills were presented for payment.
The change bills are not due until presented, hence the “current bank bills” in circulation at the place and time of presentation must control the value of the change bill. The record presenting the question, the party suing would have the right to elect whether he would recover the value of the current bank bills on the day of presentation and protest, or on the day of the commencement of his suit.
Here, however, we are relieved of the discussion of the question of value, as there is no proof of the value of current bank bills, except before the war. After that the proof is confined to the value of Central and of the Georgia Railroad banks, which were at par immediately after the termination of the war; that since that time all other bills or notes of the Georgia banks have very much depreciated — were not worth when the notes sued on were presented for payment, on an average, including Central and Georgia Railroad banks, more than ten cents in the dollar.
*413 There is no proof showing that the notes of the banks referred to circulated as currency, and' if there was, the proof of their value alone would be too restricted. The value of the change bills is not to be ascertained by reference to the value of Georgia bank bills alone. Under this state , of facts the verdict and judgment are right.
2. There is nothing in the act itself, nor in the proof aliunde, showing that it was made a law in aid of the rebellion. ' .
3. The assignment that the change bills sued on, are not signed by, the superintendent is answered by the act of 1863, ratifying the signing by Grisham for the superintendent; besides, it may be, so far as we can see, that the bills sued on, although dated before, may not have issued until after the passage of the latter act.
It is next objected that the- bills sued on are bills of credit issued by the State of Georgia on the faith of the State, in violation of the clause of the Constitution of the United States, in the - words, “no State shall emit bills of credit.” These words comprehend the emission of any paper medium by a State Government for the purpose of common circulation: 4 Peters, 410. In first volume, 9th edition, of his Commentaries, p. 453, Chancellor Kent says: “Bills of credit, within the purview of the Constitution of the United States prohibiting the emission of them, are declared to mean promissory notes issued by a State government exclusively on the credit of the State, and intended to circulate through the community for its *414 ordinary purposes, as money, and for the payment of which the faith of the State is pledged. The prohibition does not therefore apply to the notes of a State bank, drawn on the credit of a particular fund set apart for the purposed’
Were these bills issued “exclusively on the faith of the State"? We think not. Although it may be true, as argued, that the Western and Atlantic Railroad is the property of the State, it is no part of it as a sovereignty, but to all intents a corporation.
In the Bank of United States v. Planters Bank, 9 Wheat, 904, the Chief Justice, in delivering the opinion, says: “It is, we think, a sound principle, that when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges, and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates and to the business which is to be transacted. Thus many of the States of this Union who have an interest in banks are not suable, even in their own courts, yet they never exempt the corporation from being sued. The State of Georgia, by giving to the bank the capacity to sue and be sued, voluntarily strips itself of its sovereign capacity so far as respects the transactions of the banks, and 4 7 waives all the privileges of that character. As a member of a corporation, a government never exercises its sovereignty. . It acts merely as a corporator, *415 and exercises no other power in the management of the affairs of the corporation than are expressly given by the incorporating act. * * * *
“The government, by becoming a corporator, lays down its sovereignty so far as respects the transactions of the corporation, and exercises no power or privilege which is not derived from the charter. * * *
“The State does not, by becoming a corporator, identify itself with the corporation.”
These principles are quoted and approved in Briscoe v. The Bank of the Commonwealth of Kentucky, 11 Peters, 257.
They are sound, and apply accurately to the case in hand. Here the State of Georgia, in its act creating the plaintiff, brings it under the same obligations, restrictions, and liabilities, as other railroads in the State, except, perhaps, to ■ give it precedence in the collection of its debts over other corporations as well as individuals.
It has given it capacity to sue and be sued, and thus voluntarily stripped itself (i. e. the State) of its sovereign capacity so far as respects the transactions of the road, and waived all privileges of that character.
It makes no difference that the State is sole owner and proprietor, the same rule that prevents it availing itself of its character of “sovereign” when it is joint owner, obtains as well when it is sole proprietor; otherwise there would devolve upon the courts the impossibility of defining where sovereignty ceased and the character of corporator began.
*416 The change bills sued on are issued by the Western and Atlantic Railroad, who undertake to pay the bearer the amount set out on the face, at the time and in the- manner specified, the obligation or undertaking of the State nowhere appearing; and it is only through the corporation, as a corporation, that the State can be at all reached or affected.
The assurance on the end of the bill, in the words “Receivable in payment of taxes and all dues to the State, and to the Western and Atlantia Railroad,” is intended to inspire faith in its value, not by pledging the faith of the State to its payment, but as notice that the State has such confidence in its redemption, as promised, as to take them in the payments specified.
It may be remarked here, though out of its place in the argument, that this assurance proves that the corporation issuing the bills did not assume or believe that they were being emitted by the State, as it definitely takes the distinction between the corporation and the State.
The issuance dees not fall within the constitutional prohibition.
It is urged “that if the plaintiff is a corporation, it is so only in Tennessee, and in virtue of the Tennessee legislation, and the act of Georgia assuming to authorize it to issue change bills could not have extra territorial effect. The issuance was therefore in contravention of the statute and public policy of Tennessee, and no recovery can be had in Tennessee.”
This objection is in the main answered by the ar *417 gument of this opinion. We may add, there is nothing showing the issuance of the bills in this State; upon the contrary, the only office appearing in the record is at Atlanta. Upon universally recognized principles, the issuance being lawful in Georgia, the collection may be enforced anywhere.
Affirm the judgment.